## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### AT CHARLESTON

**EQT PRODUCTION COMPANY,**
**a Pennsylvania Corporation,**

**Plaintiff,**

**v.**                                           Civil Action No.  2:14-26427

**CENTRAL ENVIRONMENTAL SERVICES, LLC**
**a West Virginia Limited Liability Company,**

**Defendant.**

### COMPLAINT

For its Complaint against Defendant, Central Environmental Services, LLC, EQT Production Company, states as follows:

### PARTIES

1.      EQT Production Company (hereinafter "EQT") is a Pennsylvania Corporation with its principal place of business in Pittsburgh, Pennsylvania.

2.      Central Environmental Services, LLC (hereinafter "CES") is a West Virginia Limited Liability Company with its principal place of business in Wood County, West Virginia.

3.      Upon information and belief, the members of CES are residents of the State of West Virginia.

4.      Upon information and belief, none of the members of CES are residents of the State of Pennsylvania.

1

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the sole defendant, CES, resides in this judicial district. CES is a resident of this judicial district as its principal place of business is located in the Southern District of West Virginia. Additionally, CES is a resident of this judicial district pursuant to 28 U.S.C. §§ 1391(c)(2) as it has the capacity to sue or be sued in its common name under applicable law and is subject to this Court's personal jurisdiction with respect to this civil action.

## FACTS

7.      EQT is the owner and operator of a well site known as Rosemont 119 (hereinafter "RSM119") located in the proximity of Berry Run Road, Flemington, West Virginia.

8.      The RSM119 well site consists of six (6) Marcellus Shale wells.  These wells produce natural gas and brine water. The natural gas and brine water are separated by the use of separators. The separated brine water produced from each well is transferred from the separators to six (6) corresponding holding tanks. The separated brine water is transferred from the separators by natural gas pressure through six (6) two (2) inch pipelines. The brine water tanks are atmospherically vented to exhaust any residual natural gas in the produced brine water.

9.      The brine water storage tanks have appropriate labels and warnings for potential fire and other hazards related to the storage of materials inside said tanks.

10.     The RSM119 well site also has appropriate warning signage prohibiting the use of open flames.

11.      EQT contracted with CES to transport produced water from EQT well sites, including the produced brine water from the RSM119 brine water storage tanks.

12.     The independent contractual relationship between EQT and CES is governed by a Master Services Agreement ("MSA").

13.     In the early pre-dawn darkness hours of February 15, 2013, a CES employee, working alone, was in the process of unloading and transferring produced brine water from the RSM119 brine water storage tanks to a CES truck for transportation offsite.

14.     The process of unloading the brine water from the storage tanks requires CES employees to access a catwalk above the brine water storage tanks.

15.     While the CES employee was on the catwalk above the brine water storage tanks, he ignited a BIC lighter which caused an explosion.

16.     As a direct and proximate result of the incident, EQT has incurred substantial property damage, business interruption and other losses recoverable under applicable law.

## COUNT I - NEGLIGENCE

17.     At all times relevant to this matter, CES and its employees and agents were aware of the risks associated with unloading, transferring and hauling brine water from the RSM119 site.

18.     At all times relevant to this matter, CES had a duty to properly train and supervise its employees and agents with respect to the proper and safe methods to transport brine water transport or haul (including loading and unloading) from the RSM119 site.

19.     At all times relevant to this matter, CES had a duty to properly train its employees with respect to the use of open flames on well sites.

20.     At all times relevant to this matter, CES had a duty to provide or otherwise ensure that its employees and agents utilized appropriate and/or necessary personal protective equipment for work being performed on the RSM119 well site.

21.     At all times relevant to this matter, CES's employee at RSM 119 on February 15, 2013, was acting as the employee and agent of CES.

22.     At the time of the incident, the CES employee did not have in his possession a headlamp, flash light or other appropriate lighting device sufficient to provide necessary lighting to safely perform his tasks on the RSM119 site in pre-dawn darkness on February 15, 2013.

23.     The headlamps regularly used by CES employees were not intrinsically safe, thus causing a potential for a spark or other fire hazard.

24.     On February 15, 2013, CES's employee was not wearing a personal gas monitoring device, which he typically utilized, to alert him of the levels of methane or other combustible materials which may exist on the RSM119 site.

25.     Although CES had personal gas monitoring devices available prior to February 15, 2013, it did not require its employees to wear the same at all times while working in areas where the potential existed for a combustible atmosphere.

26.     Although CES had personal gas monitoring devices available prior to February 15, 2013, it did not recommend their use in its Best Management Practices.

27.     CES was an independent contractor of EQT with respect to the work to be performed on RSM119 by CES and its employees and agents.

28.     CES was and is responsible for the actions of its employees and agents on EQT well sites, including RSM119.

29.     CES owed a legal duty to EQT to exercise reasonable care in performing its activities with respect to CES's operations on the RSM119 well site.

30.     CES owed a legal duty to EQT to exercise reasonable care in: (a) supervising and training its employees and agents; (b) providing its employees with appropriate personal protective equipment; and, (c) performing any other work related to EQT well sites, including RSM119.

31.     CES and its employees and agents negligently breached the various duties owed to EQT with respect to CES's operations and activities on RSM119 on February 15, 2013.

32.     As a direct and proximate result of the negligence and breach of the various duties by CES, EQT sustained significant property damages, business interruption losses, loss of production, loss of income, and other various damages as permitted by law.

## COUNT II – BREACH OF CONTRACTUAL DUTY TO INDEMNIFY

33.     EQT re-alleges paragraphs 1 through 32 as if set forth verbatim herein.

34.     Pursuant to the MSA, CES has a contractual duty to indemnify and hold EQT harmless for all damages, losses and costs and expenses arising out of its work or its performance under the MSA.

35.     Pursuant to the MSA, CES has a contractual duty to indemnify and hold EQT harmless for all damages, losses and costs and expenses arising out of its, its employees or agents negligent acts or omissions.

36.     Pursuant to the MSA, CES has a contractual duty to indemnify and hold EQT harmless for all damages, losses and costs and expenses arising out of transportation or hauling (including loading and unloading) of EQT property, such as the brine water at issue herein.

37.     Pursuant to the MSA, CES has contractual duty to indemnify and hold EQT harmless for all damages, losses and expenses arising out of any breach by CES of any representation or warranty of CES under the MSA.

38.     Pursuant to MSA, CES had a contractual duty to indemnify and to hold EQT harmless for all damages, losses, and expenses arising out of CES's failure to comply with Applicable Laws, Safety Rules or Permits as defined in the MSA.

39.     CES represented and warranted its work against all deficiencies and defects in materials and/or workmanship as required in the MSA and other contract documents incorporated therein by reference as specified in the MSA.

40.     CES represented and agreed to furnish its best skill and judgment when discharging its obligations under the MSA and to complete its work in a good, workmanlike, safe, expeditious and economical manner, free from defects.

41.     CES represented and agreed to comply with the contract documents as defined in the MSA, including the "Safety Rules" as defined in the MSA, and to use the skill and judgment customarily utilized in the trade of CES in providing its work.

42.     CES represented and agreed to be responsible for the prevention of accidents and injury in the vicinity of or connected with its work.

43.     CES represented and agreed to comply with all federal, state and municipal laws, ordinances, rules, regulations, codes and other requirements concerning safety.

44.     CES represented and agreed to comply with all safety standards established by EQT.

45.     CES and its agents and employees breached the foregoing duties under the MSA causing EQT to sustain losses, damages, attorney's fees and costs.

46.     As a direct and proximate result of the explosion caused on February, 15, 2013, EQT sustained substantial damages, losses, costs and expenses, including, but not limited to, property damage, business interruption losses, loss of production, loss of income, annoyance and inconvenience, attorney's fees and expenses and other damages and losses which are covered by the MSA. EQT is entitled to be indemnified and held harmless by CES for all of its damages, losses, costs and expenses under the MSA as permitted by law and awarded any and all compensatory damages including any and all direct and consequential damages as permitted by law.

47.     Despite repeated written and oral demands by EQT seeking indemnity and to be held harmless of all losses and damages caused by the breach of the MSA, CES has failed to honor its obligation thereunder.

48.     Because CES breached the MSA and/or has failed and continues to fail to indemnify and hold EQT harmless for its losses, it is in breach of the MSA.

**WHEREFORE**, EQT Production Company demands judgment from and against Central Environmental Services, LLC, in an amount to be determined by a jury, said amount is in excess of this Court's minimum jurisdictional amount, to adequately compensate it for its damages and losses, together with prejudgment and post-judgment interest, attorney's fees and costs associated

with this action and any other relief which this Honorable Court deems just, fair, equitable and

appropriate under the circumstances.

      **A JURY TRIAL IS REQUESTED**.

                                              **Respectfully submitted,**

                                              **EQT PRODUCTION COMPANY,**

                                              **By Counsel.**

                                              */s/   R. Scott Long              10/01/2014*
R. Scott Long, Esquire (#2238)
J. Miles Morgan, Esquire (#5988)
**HENDRICKSON & LONG, P.L.L.C.**
214 Capitol Street (zip 25301)
P.O. Box 11070
Charleston, West Virginia   25339
(304) 346-5500 (Phone)
(304) 346-5515 (Fax)
scott@handl.com
mmorgan@handl.com